Brian **NEIGHBORS**, Appellant,

v.

**COMMONWEALTH of Kentucky and Amanda Neighbors,** Appellees.

NO. 2015–CA–001616–ME

Court of Appeals of Kentucky.

RENDERED: APRIL 8, 2016; 10:00 A.M.

Briefs for Appellant: Daniel Sherman, Greenville, Kentucky.

Brief for Appellees: Richard J. Deye, Butler County Attorney, Morgantown, Kentucky.

BEFORE: CLAYTON, D. LAMBERT, AND NICKELL, JUDGES

*OPINION*

NICKELL, JUDGE:

Brian Neighbors appeals from an order entered on September 18, 2015, finding him to be $23,000 in child support arrears as of May 31, 2015, and ordering him to

continue paying $100 in weekly child support, as well as $150 each month to reduce the arrearage. He alleges he was denied due process and the opportunity to cross-examine his accuser, and was erroneously told he had to have an attorney to present evidence. Having reviewed the scant record,[1] the briefs and the law, we reverse and remand for further proceedings at which the Commonwealth must establish the amount of the arrearage with evidence.

### FACTS

Brian and Amanda Neighbors married in June 1991. Two children were born to their union, B.N. in November 1991 and A.N. in June 1997. The couple separated in June 2007.

Brian and Amanda executed a custody, property settlement and separation agreement which they filed in the Butler Circuit Court, Family Division, on September 12, 2007. Under the agreement, they shared joint custody of the children, with Amanda being the primary custodian and Brian enjoying liberal visitation. Brian was to pay $100 in weekly child support, and the agreement was to be incorporated into any future decree of dissolution. On December 6, 2007, the court entered Findings of Fact, Conclusions of Law and Decree of Dissolution of Marriage in which it fully adopted the agreement Brian and Amanda had reached independently.

The case was inactive until May 14, 2015, when the Cabinet for Health and Family Services (Cabinet) filed a Notice of Assignment or Authority to Collect Child Support. This was followed by the Butler County Attorney filing a Motion for Judgment of Arrearages against Brian on September 11, 2015, seeking $23,000 in back child support as a result of the dissolution decree directing him to pay $100 each

week for the support of his two children. The motion was noticed for a hearing on September 18, 2015, and served on both Brian and Amanda. Coupled with the motion was an affidavit signed by Amanda stating:

Comes the Plaintiff, Amanda Neighbors, after being first duly sworn, and states as follows:

1. That the Butler Circuit Court entered a Findings of Fact, Conclusions of Law, and Decree of Dissolution of Marriage on the 6th day of December, 2007. Pursuant to Paragraph 4 of the Findings of Fact, Conclusions of Law, and Decree of Dissolution of Marriage entered on the 6th day of December, 2007, wherein [Brian] was ordered to pay $100.00 per week child support for the parties minor children, B.N. and A.N.

2. I am aware that the child support arrearage should by (sic) $39,000.00 from December 6, 2007 through May 31, 2005.

3. I request that $16,000.00 of those arrears be deleted, leaving an arrears balance of $23,000.00.

4. I am aware that once deleted I am unable to collect on those arrears in the future.

The hearing occurred as scheduled, beginning at 8:41 a.m. It was one of many child support cases heard that day, with most consisting of the county attorney stating a request, there being no one present to object, and the court granting the request. Brian's hearing differed in that he attended the hearing—one of the few parents who did—but without counsel. Amanda did not attend.

The hearing moved quickly, lasting just one minute twenty-four seconds. Technically speaking, there was no "testimony," although Brian was sworn and did briefly

---

1. The entire written record consists of 34 pages.

converse with the court. The entirety of the hearing is as follows:

Court: [Case called]. 2007–CI–158.

Commonwealth: Um, Your Honor, that's a motion for arrearage. Uh, existing court order is from December of 2007 ordering $100 of child support per week. And, there was an arrearage of some $23,000. Mr. Neighbors is apparently employed and has income of $3,800 per month. We're asking that the child support of $100 a week, or $433 per month, continue and that he pay $130 a month on his arrearage of $23,000.

Court: Mr. Neighbors . . .

Commonwealth: $150, I'm sorry . . .

Court: I'm sorry, what?

Commonwealth: $150 on his arrearage.

Court: [Brian sworn].

Court: Do you have any argument with what he just said?

Brian: Well, I need to know what I need to do, because he moved back in with me last night.

Court: You need to talk to an attorney or file the appropriate motion.

Brian: And he lived with me for several years.

Court: You need to talk to an attorney or file the appropriate motion.

Brian: OK [unintelligible].

Court: OK. I'll approve it today, but if I were you, I'd get crackin' on that one way or the other. OK? Alright, you're free to go.

Thereafter the court entered an order on September 18, 2015, finding Brian had been ordered to pay weekly child support of $100 in December 2007 for his two children, and as of May 31, 2015, an arrearage of $23,000 was owed to Amanda. The court left the weekly support order of $100 intact, but added a requirement that Brian pay $150 each month to retire the arrearage.

On October 16, 2015, Brian filed a *pro se* motion seeking sole custody of A.N., "because he has lived with me the most of his life. I will provide his needs, and see that he gets his education." That same day, counsel filed a notice of appeal on Brian's behalf challenging the order finding the arrearage and continuing payment of weekly child support. This appeal follows.

## ANALYSIS

■ Brian asserts three errors on appeal, one of them being he was told he needed an attorney and could not represent himself. In reviewing the hearing, the trial court never told Brian to hire an attorney and did not prevent Brian from representing himself. Thus, we reject the allegation that the court required Brian to hire an attorney—a review of the record confirms that simply did not happen.

The issue arose when the court asked Brian whether he disagreed with anything the county attorney had said, prompting Brian to respond, "Well, I need to know what I need to do, because he moved back in with me last night." In answering Brian's request for legal advice, the court twice stated, "You need to talk to an attorney or file the appropriate motion." These were indeed the two options available to Brian—options he could have exercised upon receiving notice of the hearing several days before coming to court. Brian having done neither, the court could not practice the case for him. Being presented with a request for legal advice, the court responded appropriately and maintained its neutrality.

■ We combine the two remaining claims of error—a denial of due process and a denial of the opportunity for cross-examination. In cases of child support enforcement, the Commonwealth bears the

burden of establishing entry of a valid order; upon doing so, the burden shifts to the obligor to prove the claimed arrearage is inaccurate. As explained in *Sallee v. Sallee*, 468 S.W.3d 356, 357–58 (Ky.App. 2015),

> [i]t is well-established that "each installment of child support becomes a lump sum judgment, unchangeable by the trial court when it becomes due and is unpaid." *Raymer v. Raymer*, 752 S.W.2d 313, 314 (Ky.App.1988) (quoting *Stewart v. Raikes*, 627 S.W.2d 586, 589 (Ky.1982)). In *Raymer*, this Court held that satisfaction and payment of child support are both affirmative defenses under Kentucky Rules of Civil Procedure (CR) 8.03, and pointed out that "[t]he party holding the affirmative of an issue must produce the evidence to prove it." *Raymer*, 752 S.W.2d at 314 (quoting CR 43.01). In *Gibson v. Gibson*, 211 S.W.3d 601 (Ky.App.2006), this Court addressed this exact issue as follows:
>
> > Once the validity of an order setting child support is established, the non-custodial parent bears the burden of proving that he satisfied the obligation and owes no arrearage. It is clearly discretionary with the court to award interest on a child support arrearage; if there are factors making it inequitable to require payment of interest it may be denied....
>
> *Id.* at 611 (footnotes omitted).
>
> Thus, once the child support obligee establishes the validity of a decree or order setting child support, the obligor parent carries the burden of proof "that he satisfied the [child support] obligation and owes no arrearage." *Id.* at 611.

*Sallee*, 468 S.W.3d at 357–58.

When this case was called, the county attorney referenced a December 2007 order directing Brian to pay $100 in child support each week. He then stated $23,000 was owed in back child support, but offered no testimony or other proof in support of the arrearage amount, and no explanation of how the arrearage was calculated. This was critical information, especially since $39,000 should have been owed, but for some unknown reason Amanda had asked that $16,000 be forgiven.

The hearing was an evidentiary hearing, *Sallee*, 468 S.W.3d at 358, which presupposed the presentation of "evidence" by the Commonwealth as to the amount of the arrearage, and by Brian if the amount claimed was contested. The lack of any proof by any party is problematic.

The Commonwealth supported its written motion with Amanda's affidavit, but an affidavit is merely out-of-court hearsay, 5 Ky. Prac. Methods of Prac. § 32:1. "An affidavit is the weakest kind of proof and is not admissible as primary evidence of facts it narrates except under an express or special statutory provision...." *Commonwealth, by Funk v. Clark*, 311 Ky. 710, 713, 225 S.W.2d 118, 119 (1949). While the county attorney did not mention Amanda's affidavit during the hearing, we are unaware of any exception to the rule against hearsay that would have allowed it to be used as substantive proof had it been offered. The better practice would have been for the county attorney to offer live testimony from Amanda or the Cabinet to establish the amount of arrearage owed. The county attorney merely repeating the number "$23,000" in open court did not establish the arrearage because the county attorney was not a witness.

Brian is not without fault. He could have, and should have, prepared for the hearing. This could have meant conferring with an attorney, filing a written

response to the motion, or filing his own motion for some other relief—it appears he had some defense to the stated amount of arrearage since he claimed his son had lived with him several years—making proof appropriate. The record does not indicate what, if anything, Brian did after receiving notice of the hearing. We do know he offered no proof at the hearing— no cancelled checks or receipts; he did not challenge the Commonwealth's or Amanda's calculation of the $23,000 arrearage; nor did he request a continuance to develop proof or subpoena witnesses—all actions that may have altered the final result. Without a motion from Brian, the court could provide no relief. As the hearing unfolded, Brian did not carry his burden. *Sallee*, 468 S.W.3d at 358.

■ We are not as troubled by Brian's claim that he was denied the opportunity to cross-examine Amanda about her affidavit. The Commonwealth was entitled to present its case as it saw fit, it just needed to include actual proof. If Brian deemed testimony from Amanda critical to his case, he could have subpoenaed her himself rather than expecting the Commonwealth to put her on the witness stand so he could cross-examine her. While civil litigants may confront and cross-examine witnesses, those rights are not "universally applicable to civil proceedings." *Cabinet for Health and Family Services v. A.G.G.*, 190 S.W.3d 338, 345–46 (Ky.2006) (internal citations omitted). Whether cross-examination is necessary depends on the particular situation. *Id.*, at 346.

In conclusion, REVERSAL and REMAND to the Butler Circuit Court is necessary with direction for a new hearing at which the Commonwealth presents proof of the alleged child support arrearage. There was no denial of an opportunity to cross-examine an adverse witness, rather there was a failure by the Commonwealth to present any evidence of an arrearage. Finally, we discern no error in the trial court's response to the *pro se* litigant's request for legal advice—the court appropriately suggested he speak with an attorney or file a proper motion.

ALL CONCUR.